# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

KENNETH GEORGE,          )
                              )
      Plaintiff,           )
                              )
vs.                           )      Case No. 4:16-cv-01311-TMP
                              )
NANCY A. BERRYHILL,[1]     )
*Acting Commissioner of the Social*  )
*Security Administration*,      )
                              )
      Defendant.         )

## <u>MEMORANDUM OPINION</u>

The plaintiff, Kenneth George, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). The plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9).

---

[1]  Counsel for the Commissioner pointed out in his brief that Carolyn W. Colvin is no longer the Commissioner and that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. The Clerk is DIRECTED to update the style of the case accordingly.

**Introduction**

Mr. George was 47 years old on the date of the ALJ's opinion, which occurred on March 10, 2015. (Tr. at 70, 151). Although he was in special education classes, he completed the twelfth grade. (Tr. 195, 320). His past work experience includes employment as a painter, live chicken hanger, oil changer, groundskeeper/tractor operator, janitor/maintenance, and tire thrower. (Tr. at 37, 195, 202). Mr. George claims that he became disabled on January 1, 2013, due to back problems, high blood pressure, and headaches. (Tr. at 44).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. (*Id.*) If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. (*Id.*) The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. (*Id.*) If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. (*Id.*) If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*) Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. (*Id.*) The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can

perform; and, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. George was insured through March 31, 2016. (Tr. at 75). He further determined that Mr. George has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Mr. George has the following impairments that are considered "severe" based on the requirements set forth in the regulations: lumbar degenerative disc disease, obesity, hypertension, osteoarthritis, mood disorder, and reading and math disorder. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. at 76). The ALJ did not find Mr. George's allegations entirely credible (Tr. at 79), and he determined that he has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with no right side foot control operation and no climbing of ladders, ropes or scaffolds. He is precluded from commercial driving and from exposure to hazardous or moving machinery, unprotected heights, and uneven terrain. He can sustain no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching and crawling. He requires a handheld device for ambulation, balancing

and standing. He needs work that requires no more than the understanding, remembering and carrying out of simple instructions. That activity can be sustained for two hours at a time and with mid-morning, lunch and mid-afternoon breaks, can be sustained over an eight-hour day. The work should require no more than occasional changes in the work setting and no more than occasional interaction with the public, co-workers and supervisors.

(Tr. at 78).

According to the ALJ, Mr. George is unable to perform any of his past relevant work, he is a "younger individual," and he has "at least a high school education," as those terms are defined by the regulations. (Tr. at 83-84). He determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not he has transferable job skills." (Tr. at 84). The ALJ found that Mr. George has the residual functional capacity to perform sedentary "jobs that exist in significant numbers in the national economy." (*Id.*). Even though additional limitations impede Mr. George's "residual functional capacity to perform the full range of sedentary work," the ALJ determined that Mr. George "would be able to perform the requirements of representative sedentary, unskilled occupations with an SVP of 2, such as . . . table worker, . . . assembler, . . . .and as a[n] inspector." (Tr. at 84-85). The ALJ concluded his findings by stating that Mr. George "has not been under a disability,

as defined in the Social Security Act, from January 1, 2013, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision,

the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

Mr. George argues that the Commissioner's decision should be overturned for five reasons. First, he contends that the ALJ failed to accord proper weight to the opinions of Dr. Nichols and Dr. Estock, consulting physicians for the Commissioner. Second, he asserts that the ALJ failed to adequately consider Mr. George's testimony concerning the side effects of his pain medication. Third, he contends that the ALJ's conclusion that Mr. George retains the RFC to perform sedentary work is not supported by substantial evidence and that the RFC violates SSR 96-8p. Fourth, he maintains that the case should be remanded because the ALJ failed to assess the intensity and persistence of Mr. George's symptoms pursuant to SSR 16-3p. Finally, he argues that the Appeals Council failed to show that it had adequately evaluated the newly submitted evidence.

### A. Consideration of Dr. Nichols and Dr. Estock's Opinions

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 1997) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the

opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) . . . was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Of course, neither Dr. Nichols nor Dr. Estock was plaintiff's treating physician. The great weight ordinarily accorded the opinions of the claimant's treating physician simply does not extend to them. Dr. Nichols performed a consultation based upon an examination, while Dr. Estock was a non-examining consultant. "The opinions of nonexamining, reviewing physicians… when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985) (*per curiam*)).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical

opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. *See also* 20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

### 1. The Weight Given to Dr. Nichols

Mr. George argues that the ALJ failed to accord proper weight to the opinion of Dr. June Nichols, an examining medical consultant. According to the ALJ, during his consultation with Dr. Nichols, Mr. George "reported that he no longer felt like doing things and that his wife had to help him with things such as bathing and driving him where he needed to go." (Tr. at 81). Dr. Nichols noted that Mr. George's "affect was within normal limits with only situational anxiety [present]. His mood was mildly depressed." (Tr. at 320). She further noted that he had

difficulty with sleeping and that he was fully oriented. (Tr. at 320-21). However, Mr. George "was unable to compute Serial Sevens or Serial Threes." (Tr. at 321). He could not do multiplication problems, but he could "calculate simple addition and subtraction" problems. (*Id.*). His "recent and remote memory functions appeared mildly impaired," although his "[f]und of information was fair." (*Id.*). His thought processes and thought content were normal. (*Id.*). Dr. Nichols further concluded that Mr. George likely "functions in the low-average range of intellectual ability." (*Id.*). She diagnosed Mr. George with "mood disorder directly related to medical condition, depression[;]" "alcohol abuse in remission[;]" "reading disorder[;]" and "disorder of mathematics." (*Id.*). Additionally, she diagnosed Mr. George with high blood pressure, stomach ulcers, chronic migraines, chronic back pain, and insomnia. (Tr. at 322). She assigned Mr. George a global assessment of functioning score of 55. (*Id.*).

The ALJ concluded, however, that "the opinion of Dr. Nichols is given only some weight." (Tr. at 81). The ALJ found that Mr. George had "failed to seek formal mental health treatment[,] . . . ha[d] not made any significant complaints of mental health symptoms to his treating physicians[,] . . . [and] ha[d] not been prescribed any psychotropic medications." (*Id.*). Additionally, the ALJ noted that, "[w]hile he testified at the hearing to anxiety and some problems focusing,

[Mr. George] also testified that he still is not taking any medications for his alleged mental health symptoms." (*Id.*).

The record makes clear that not one of Mr. George's treating physicians has ever concluded that Mr. George suffered from mental health symptoms. In fact, the record is replete with examples to the contrary, where the attending medical professional noted that Mr. George was "Negative for anxiety and depression" during office visits ranging from January 23, 2013 to September 12, 2014 (Tr. at 293, 297, 304, 334, 343, 348, 353, 358). Additionally, Dr. Jimmy Oguntuyo found Mr. George's psychiatric system "within normal limits" on four different visits between September 9, 2014, and November 18, 2014. (Tr. at 364, 368, 382, 388). The ALJ articulated reasons for giving less than controlling weight to Dr. Nichols' conclusions, given Mr. George's failure to complain of mental health symptoms to his treating physicians and to seek treatment. Dr. Nichols' diagnosis simply was not bolstered by the other evidence in the record. Accordingly, the ALJ had good cause for giving Dr. Nichols' diagnosis "little weight."[2]

---

[2]  Additionally, the ALJ found that while

> [t]he claimant does have some physical and psychiatric issues that may cause him some limitations in the workplace, . . . those limitations are not so severe as to preclude him from all work. Throughout visits to Quality of Life from 2013 through 2014, the claimant's review of systems was negative for anxiety, depression or confusion (Exhibits 1F, 6F, 7F). He was oriented to time, place, person and situation at those visits. The claimant's psychiatric examinations during visits to Dr. Oguntuyo from September through November of 2014 were normal as well (Exhibits 8F, 9F & 1 1F). None of the claimant's treating physicians documented any observations of the claimant that would indicate that

*2. The Weight Given to Dr. Estock*

Mr. George further argues that the ALJ failed to accord proper weight to the opinion of Dr. Robert Estock, a non-examining consultative physician. Dr. Estock reported that Mr. George had "moderate" limitations in a few categories of his mental functioning. However, Dr. Estock ultimately determined that Mr. George was capable of understanding, remembering, and carrying "out short and simple instructions[;]" attending and concentrating for "2 hour periods on simple tasks with customary breaks and rest during the regular workday[;]" and should have only casual and non-confrontational contact with co-workers, supervisors, and the general public. (Tr. at 53).

Although Dr. Estock opined that Mr. George "may miss [one to two] days a month of work due to psychiatric signs and symptoms," the medical record directly

---

he was experiencing any serious problems with his mental functioning. The claimant's medical records show that other than Trazodone or Ambien for his complaints of insomnia, he has taken no other medications for treatment of his alleged psychiatric symptoms. At the hearing, the claimant testified that he is not taking any psychotropic medications. Given the facts that he is not taking any such medications, that he has not been referred for mental health treatment, and that he has not sought mental health treatment, the claimant's psychiatric impairments are not disabling. The evidence does support a finding that he has only mild restriction in his activities of daily living and no more than moderate difficulties in her [sic] social functioning and with regard to concentration, persistence or pace. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration as he has had no formal mental health treatment and no psychiatric hospitalizations.

(Tr. at 82). These findings, even if given greater weight, would not support a finding of disability.

contradicts Dr. Estock's conclusion, as discussed *supra* in Section III.A.1. All of the cases relied upon by the plaintiff to support his claim that the ALJ's opinion is due to be reversed are cases in which the ALJ "ignored" the opinion of a consulting physician. (Doc. 14, pp. 13-18). In this case, the ALJ explicitly noted that he gave Dr. Estock's opinion "only some weight." (Tr. at 81). In fact, the ALJ found that "[t]he lack of mental health treatment fails to support Dr. Estock's opinion that the claimant may miss one to two days of work per month due to psychiatric signs and symptoms given that he has no history of complaints or treatment for mental impairments." (*Id.*). Clearly, the treating physician rule does not apply to Dr. Estock's opinions. The ALJ explicitly considered the opinion of this non-treating physician and gave the opinion only some weight based upon the other medical evidence in the record.

In sum, the ALJ did not improperly weigh the medical evidence put before him and did not substitute his own opinion for any medical opinions of any treating or consulting medical professionals.

### B. Consideration of Testimony Concerning Side Effects of Medication

Mr. George argues that the ALJ failed to consider adequately Mr. George's testimony concerning the side effects of his pain medication. In *Walker v. Comm'r of Soc. Sec.*, the Eleventh Circuit Court of Appeals explained that,

[i]n determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). We have concluded that, under certain circumstances, an ALJ's duty to develop a full record can include investigating the side effects of medications. *Compare Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir.1981) (concluding that ALJ failed to fully develop record where *pro se* claimant testified that she took eight different prescription medications and was "kind of zonked most of the time" and ALJ failed to either elicit testimony or make findings regarding effect of medications on her ability to work), with *Passopulos v. Sullivan,* 976 F.2d 642, 648 (11th Cir.1992) (concluding that ALJ did not fail to develop record where claimant did not present evidence he was taking medication that caused side effects), and *Cherry v. Heckler,* 760 F.2d 1186, 1191 n. 7 (11th Cir.1985) (concluding Secretary, upon reopening, did not have duty to further investigate side effects of counseled claimant's medications where claimant did not allege side effects contributed to her disability and stated only that her medication made her drowsy).

However, the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir.2003). Thus, the claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work. *See id.*

404 Fed. App'x 362, 366 (11th Cir. 2010). In *Walker*, the claimant testified about her side effects, indicating that her only side effects "were dizziness and headaches." *Id.* In his opinion, "[t]he ALJ noted this testimony in his decision." *Id.* However, Walker had complained about headaches and dizziness as symptoms, not side effects, to her doctors. *Id. at 367.* The Eleventh Circuit held

that "the ALJ was not under a duty to elicit further information about Walker's medication side effects." *Id.*

Furthermore, "[w]here an unrepresented claimant's hearing testimony raises a question about the side effects of medications, we have concluded that the ALJ has a special duty to elicit additional testimony or otherwise make a finding about such side effects." *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 Fed. App'x 236, 238 (11th Cir. 2011). However, "where a represented claimant makes a similar statement, but does not otherwise allege that the side effects contribute to the alleged disability, we have determined that the ALJ does not err in failing 'to inquire further into possible side effects.'" *Id.* (quoting *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985). In *Colon*, the Eleventh Circuit found that

> [t]he ALJ noted the obligation to consider the side effects of Mr. Colon's medications when assessing his subjective complaints and summarized the limited evidence in the record about the side effects. While Mr. Colon had reported some side effects from his medications in a disability report and his lawyer had given the ALJ a list of Mr. Colon's medications and their side effects, Mr. Colon did not mention his medication side effects in response to the ALJ's questions about why he could not return to work. Because Mr. Colon was represented at his hearing, the ALJ was not required to inquire further into Mr. Colon's alleged side effects; and Colon has not shown that the ALJ applied incorrect legal standards. *See* [*Cherry,* 760 F.2d at 1191 n.7].

*Id.* The Eleventh Circuit held that "[s]ubstantial evidence support[ed] the ALJ's decision to discredit Mr. Colon's complaints as they related to medication side

effects: none of Mr. Colon's doctors reported any side effects from his medications, and he did not complain to them of any side effects." *Id.*

Here, Mr. George was represented by counsel at the ALJ hearing. He testified about being feeling "doped up" (tr. at 27) and feeling drowsy and sleepy from the medication his doctors have prescribed him (tr. at 30, 32). However, he "only spoke to [his doctors] about" his pain. (Tr. at 32). In his opinion, the ALJ noted that Mr. George "testified that his medications make him drowsy so he sleeps too much. While some of the medications that have been prescribed to the claimant may result in drowsiness, the claimant's medical records do not show that he reported experiencing drowsiness from his medications to any of his treating physicians." (Tr. at 83). It is clear that the ALJ considered Mr. George's side effects in the decision.[3] A review of the medical records indicates that Mr. George did not complain about any side effects to his doctors prior to the hearing. Accordingly, substantial evidence supports that the ALJ properly considered Mr. George's alleged side effects.

---

[3]     The sole case cited by Mr. George is easily distinguishable from the facts at hand. In *Waters v. Berryhill*, No. CV 316-002, 2017 WL 694243, at *6 (S.D. Ga. Jan. 30, 2017), the ALJ did not consider the side effects of the pain medications that the claimant had reported in writing and under oath during the hearing. Furthermore, the ALJ failed to note the hearing testimony in the decision. *Id. at 7.* Here, the decision clearly notes the only side effects that Mr. George complained of during the hearing. Other records do not indicate that Mr. George reported his side effects in writing to the Social Security Administration or the ALJ prior to the hearing.

## C. RFC Assessment

Mr. George contends that the ALJ's conclusion that Mr. George retains the RFC to perform sedentary work is not supported by substantial evidence. He alleges that the RFC violates SSR 96-8p, which requires a narrative discussion of the RFC. Specifically, SSR 96-8p requires the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)[7], and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> . . .
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints *solely* on the basis of such personal observations.
>
> . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Mr. George appears to identify four errors: (1) the ALJ's RFC assessment is conclusory and does not contain any reference to supporting evidence; (2) "[t]he ALJ failed to follow SSR 96-8p in finding that the claimant has minor physical limitations"; (3) "substantial evidence does not support a finding that the claimant can perform sustained work activity"; and (4) the RFC assessment should have relied on a treating physician's formal assessment regarding the claimant's capabilities. (Doc. 14, pp. 20-22). Each is discussed in turn below.

*1. RFC Assessment Is Not Conclusory*

With regard to the first alleged error, Mr. George's contention that the ALJ's RFC assessment is conclusory and fails to refer to supporting evidence simply overlooks the ALJ's findings. After determining Mr. George's RFC, the ALJ spent approximately five pages of his decision describing the medical records; the various opinions and assessments by Drs. Tariq, Borlaza, Nichols, Estock, and Oguntuyo; Mr. George's function report; and the third-party function report prepared by Mr. George's wife. The ALJ stated:

> The claimant does have some physical and psychiatric issues that may cause him some limitations in the workplace, but those limitations are not so severe as to preclude him from all work. Throughout visits to Quality of Life from 2013 through 2014, the claimant's review of systems was negative for anxiety, depression or confusion (Exhibits lF, 6F, 7F). He was oriented to time, place, person and situation at

those visits. The claimant's psychiatric examinations during visits to Dr. Oguntuyo from September through November of 2014 were normal as well (Exhibits 8F, 9F & 1 1F). None of the claimant's treating physicians documented any observations of the claimant that would indicate that he was experiencing any serious problems with his mental functioning. The claimant's medical records show that other than Trazodone or Ambien for his complaints of insomnia, he has taken no other medications for treatment of his alleged psychiatric symptoms. At the hearing, the claimant testified that he is not taking any psychotropic medications. Given the facts that he is not taking any such medications, that he has not been referred for mental health treatment, and that he has not sought mental health treatment, the claimant's psychiatric impairments are not disabling. The evidence does support a finding that he has only mild restriction in his activities of daily living and no more than moderate difficulties in her social functioning and with regard to concentration, persistence or pace. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration as he has had no formal mental health treatment and no psychiatric hospitalizations.

The objective medical evidence fails to support the frequency and severity of symptoms alleged by the claimant. His back pain and hypertension are well controlled with his medications and while he has reported hip pain, the obtainable x-rays show no underlying medical condition that would cause such pain. When the claimant reported headaches, they were described by him as being off and on. At the hearing, the claimant testified that his medications make him drowsy so he sleeps too much. While some of the medications that have been prescribed to the claimant may result in drowsiness, the claimant's medical records do not show that he reported experiencing drowsiness from his medications to any of his treating physicians. The claimant's physical examinations have been largely normal and do not support the severity of pain and limitations alleged by the claimant. Additionally, imaging of the claimant's back show no more than mild to moderate changes (Exhibit 10F).

Viewing the totality of the claimant's impairments in light of the objective medical evidence of record, the undersigned finds that restricting the claimant to work at the sedentary level of exertion

within the confines of the above residual functional capacity is appropriate. While the claimant uses a cane, his use of that cane does not preclude him from performing sedentary work as set out in that residual functional capacity, especially in light of the fact that he is able to ambulate. Notwithstanding his allegations of disabling pain and disabling symptoms of depression, treatment records and examinations do not provide evidence that would support a finding that the claimant is as physically and mentally limited as alleged.

The claimant may experience periodic episodes of pain and discomfort; however, substantial evidence in the record considered as a whole, does not support a finding that his ability to exert himself physically and mentally is seriously reduced such that he could not engage in work activity. The claimant's self-reported limitations are not consistent with the medical evidence and he simply alleges a greater degree of debilitation than what objective evidence can support. Therefore, the undersigned finds that the claimant's statements regarding his pain and limitations are not fully credible and that his impairments are not disabling.

The opinion of the claimant's wife as set out in the Third Party Function Report at Exhibit 5E was considered and given some weight. Her opinion is based on casual observation rather than objective medical testing, and it is subject to motivations based upon loyalties of family rather than disinterested evaluation. It certainly does not outweigh the accumulated medical evidence or the opinion of Dr. Borlaza, the state agency examining physician, regarding the extent to which the claimant's limitations can reasonably be considered a result of his determinable impairments.

(Tr. at 82-83). Notably, the ALJ concluded by stating: "the above [RFC] assessment is supported by the record, when considered as a whole, *especially in light of the course of treatment prescribed to the claimant for his impairments, the opinion evidence as discussed above, and the medical treatment records discussed*

*above*, all of which suggest greater sustained capacity than described by the claimant." (*Id.*) (emphasis added).

In the Eleventh Circuit, "even when the ALJ could have been 'more specific and explicit' in his findings with respect to a plaintiff's 'functional limitations and work-related abilities on a function-by-function basis,' they nonetheless meet the requirement under 96-8p if the ALJ considered all of the evidence." *Mill v. Colvin*, No.2:12-cv-2869-LSC, 2013 WL 6407973, at *4 (N.D. Ala. Dec. 6, 2013). The court also understands that the ALJ is not required to refer to every piece of evidence in his determination, so long as his denial of the plaintiff's claim is not an arbitrary dismissal that does not consider the plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted). Clearly, the ALJ complied with SSR 96-8p in assessing Mr. George's RFC. He accurately addressed at length the medical records and opinions of Drs. Tariq, Borlaza, Nichols, Estock, and Oguntuyo.

### 2. *Minor Physical Impairment*

Although Mr. George contends otherwise, the ALJ did not err "in finding that the claimant has minor physical limitations." (*See* doc. 14, p. 21). To support his argument, Mr. George states that SSR 96-8p dictates "the limited circumstances under which the ALJ can find a claimant to have no functional limitation." (*Id.*). However, the ALJ here did not find that Mr. George does not have a functional

limitation. Instead, the ALJ held that Mr. George was limited to sedentary work, asserting that Mr. George is not "*as* physically and mentally limited as alleged." (Tr. at 83) (emphasis added). Therefore, ALJ's RFC assessment is based upon substantial evidence.

### 3. Performance of Sustained Work Activities

Mr. George contends that the ALJ erred in finding that he could perform sustained work activities. He asserts that the RFC assessment should "consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." (Doc. 14, p.21). However, Mr. George does not point to specific evidence in the record to support his position that he cannot perform sustained activities. The ALJ considered at length the medical evidence presented and determined that Mr. George is capable to working an eight-hour job, with appropriate breaks, at a sedentary level of exertion. There is no evidence in the record indicating that he cannot do so. Accordingly, the ALJ's decision is supported by the substantial evidence in the record.

### 4. RFC Supported by Treating or Examining Physician

Mr. George argues that the "fifth-step burden cannot be met by a lack of evidence, . . . but instead must be supported by the residual functional capacity of a treating or examining physician." (Doc. 14, p. 22). Mr. George's argument

ignores the well-settled law that the responsibility for assessing the RFC of a claimant is a matter reserved to the ALJ. *See* 20 C.F.R. §§ 404.1527(e), 416.927(d). Under the regulations governing Social Security benefits, the RFC is not a medical assessment; rather, it is "the most [the plaintiff] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC is based upon "all relevant medical and other evidence[] of a claimant's remaining ability to work despite his impairment." *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014). However, the ALJ is required "to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006), citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ did that here. The cases cited by Mr. George are easily distinguishable in that the ALJ considered the assessment of both examining and non-examining consultative physicians before deciding to accord the assessments little weight given the record as a whole. Accordingly, substantial evidence supports the ALJ's RFC.

### D. ALJ's Assessment of Mr. George's Credibility

Mr. George argues that the ALJ erred in finding his subjective complaints "not entirely" credible because the ALJ failed to retroactively apply SSR 16-3p, which became effective March 28, 2016. The ALJ applied SSR 97-7p, which was in effect at the time of the Mr. George's adjudication by the ALJ, but which was

superseded by SSR 16-3p. The new regulation removes the term "credibility" from the policy, and clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1.

Since this matter was briefed, the Eleventh Circuit Court of Appeals has stated, in a published opinion, that SSR 16-3p does **not** apply retroactively. *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284 (11th Cir. 2017), *vacated and substituted by, Hargress v. Social Security Admin., Comm'r, No. 17-11683, 2018 WL 1061567 (11th Cir. Feb. 27, 2018)*. In *Hargress*, the court of appeals, in a case brought by the same counsel as Mr. George's counsel at bar, rejected the argument that SSR 16-3p applies retroactively, specifically holding that the rule "applies only prospectively and does not provide a basis for remand." 2018 WL 1061567 at *5. The court further noted that even if it were applied to the ALJ decision, remand would not be warranted because the ALJ "did not assess [the plaintiff's] overall character or truthfulness, but rather ... assessed [the plaintiff's] subjective complaints of disabling pain and fatigue and concluded that they were not consistent with the other evidence in the record." *Id.* at 1290 n.3.[4]

---

[4]    At the time this matter was briefed, only the Seventh Circuit Court of Appeals had applied SSR 16-3p retroactively. *Cole v. Colvin*, 2016 WL 3997246 (7th Cir. July 26, 2016). However, courts within this district have consistently rejected the concept that the newly-promulgated rule is applied retroactively. Judge Virginia Hopkins' decision in *Ring v. Berryhill*, 241 F. Supp. 3d 1235 (N.D. Ala. March 15, 2017), is on appeal at the Eleventh Circuit. Also on appeal is a case in which Judge L. Scott Coogler determined that, given the Supreme Court's determination that retroactivity is not favored, and in the "absence of any binding precedent directing that SSR16-3p is to apply retroactively," the rule would not be given retroactive

In this case, the argument relating to SSR 16-3p is unavailing for two reasons. First, there is controlling authority holding that the rule is not applied retroactively. Second, even if the rule were retroactive, the ALJ did not examine Mr. George's overall character: he merely examined the descriptions of the plaintiff's activities, his own testimony regarding his impairments, and the entire record regarding his medical treatment. As a result, the ALJ found that the evidence was not consistent with the plaintiff's allegations regarding disability. The ALJ's assessment in this case is similar to the ALJ's assessment that was examined in *Hargress*. The primary case relied upon by the plaintiff, which is non-binding and not from within the Eleventh Circuit, found remand appropriate because the ALJ mounted an attack on the plaintiff's character. *Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 WL 4250214, at *2-*4 (C.D. Ill. Aug. 9, 2016). Here, the ALJ did not mount "an attack on the plaintiff's character." *See id.* In this case, the ALJ properly assessed the limitations and symptoms described by Mr. George and determined the outcome in accordance with applicable law, even if that were to include the retroactive application of 16-3p. Accordingly, the motion to remand is due to be denied.

---

application. *Wood v. Berryhill*, No. 4:15-cv-1248-LSC, 2017 WL 1196951, at *7-*10 (N.D. Ala. Mar. 31, 2017); *see also Naler v. Berryhill*, No. 4:16-cv-627-JEO, 2017 WL 22774733, at *5 (N.D. Ala. June 27, 2017).

### E. Appeals Council Consideration

Mr. George contends that the decision of the Appeals Council should be overturned or remanded. In its denial of Mr. George's request for review, the Appeals Council stated that "we considered . . . the decision and medical records from Quality of Life Health Services dated December 31, 2014 (9 pages), Southern Pain Management dated February 11, 2015 through March 27, 2015 (10 pages), and Quality of Health Life Services dated June 17, 2015 through July 21, 2015 (12 pages), which are listed on the enclosed Order of Appeals Council with the record. . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. at 2). Mr. George contends in his brief that the "review [was] purely conclusory. . . . [The Appeals Council] claims to have considered the new evidence, but it offers no material basis for affirming the decision." (Doc. 14, p. 32).

Mr. George's complaint that the Appeals Council failed to address the new evidence may be resolved using the same analysis that was used in the recent Eleventh Circuit opinion, *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780 (11th Cir. 2014). As in the instant case, the Appeals Council in *Mitchell* "denied [the claimant's] request for review, explaining that it had considered [his] reasons for disagreeing with the ALJ's decision as well as his additional evidence," and determined that the new evidence did not provide a basis for changing the ALJ's

decision. *Id*. at 782. Also similar to the instant case, the Appeals Council in *Mitchell* did not engage in a discussion of the new evidence. *Id*. The Eleventh Circuit held that "the Appeals Council is not required to explain its rationale for denying a request for review. . . ." *Id*. at 784. This court has no reason to second-guess the assertion by the Appeals Council that it considered the new evidence offered by the plaintiff. Accordingly, to the extent the plaintiff intends to argue in his brief that his case should be remanded for this reason, the argument is without merit.

The new evidence under consideration by the Appeals Council was a set of medical records from Quality of Life Health Services dated December 31, 2014, and then June 17, 2015, through July 21, 2015, and Southern Pain Management dated February 11, 2015, through March 27, 2015. To the extent Mr. George contends that the second set of records should have prompted the Appeals Council to remand the case to the ALJ for further consideration, the court finds that the newly presented evidence was cumulative in nature and immaterial. Therefore, referral back to the ALJ was unnecessary.

As a general matter, "a claimant may present evidence at each stage of the administrative process." *Hargress*, 874 F.3d at 1290 (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) and 20 C.F.R. § 404.900(b)). "The Appeals Council must consider new, material, and

chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261; 20 C.F.R. § 404.900(b). Only "if a reasonable possibility exists that the evidence would change the administrative result" may evidence be considered material. *Hargress*, 874 F.3d at 1291 (citing *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1321 (11th Cir. 2015).

The Eleventh Circuit has held that "[n]ew evidence is chronologically relevant if it 'relates to the period on or before the date of the [ALJ's] hearing decision." *Hargress*, 874 F.3d at 1291 (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b)). "Evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether the claimant was disabled during the relevant time period under review." *Ashley v. Comm'r, Soc. Sec. Admin.*, 707 Fed. App'x 939, 944 (11th Cir. 2017) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). However, in *Hargress*, the Eleventh Circuit noted "'that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant.'" 874 F.3d at 1291 (citing *Washington*, 806 F.3d at 1322). The Court went on to explain:

> In *Washington*, the claimant submitted to the Appeals Council a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven

months after the ALJ's decision. *Id.* at 1319-20. This Court concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case").

*Id.* The Court did not "address Hargress's argument that the denial of benefits was erroneous when th[e] new evidence [was] considered." *Id.* at 1291-92.

The 2014 and 2015 medical records are cumulative in nature, immaterial, and do not indicate any deterioration in Mr. George's condition that would render the ALJ's determination erroneous. After the hearing, on December 31, 2014, Mr. George followed up with Quality of Life Health Services regarding his hypertension and to refill his medications. (Tr. at 393). During the visit, Dr. Tariq noted that Mr. George presented with "inappropriate mood and affect – depressed" on that visit. (Tr. at 399). Mr. George returned to Quality of Life Health Services on June 17, 2015, to follow up on his hypertension and back pain and to refill his medications. (Tr. at 413).

On February 11, 2015, Mr. George visited Southern Pain Management concerning his low back pain and how to better manage his pain. (Tr. at 409). Dr. Phillips noted that Mr. George was "alert and oriented." (Tr. at 410). She prescribed him Zanaflex for the first time. (*Id.*). On March 11, 2015, Mr. George

returned for an office visit where he reported that Zanaflex caused "excessive drowsiness." (Tr. at 408). Dr. Phillips reduced the dosage and prescribed Opana. (*Id.*). On March 26, 2015, Mr. George again returned for an office visit where he reported that Opana made him nauseated. (Tr. at 406). Mr. George took Opana for only a few days before he voluntarily ceased taking it. (*Id.*; *see also* tr. at 413-14 (indicating that Mr. George was not taking Opana as of June 17, 2015)). Dr. Morris performed an EMG on March 27, 2015, which revealed a normal study and "[n]o evidence of peroneal or tibial entrapment neuropathy as well as ongoing radiculopathy." (Tr. at 404).

The new medical records are neither chronologically relevant nor material. Mr. George continued to see his doctors for the same issues that existed prior to the ALJ hearing, and his new complaints about side effects concerned medications he was prescribed after the ALJ hearing. Specifically, Mr. George visited Dr. Phillips at Southern Pain Management for the purpose of pain management. Importantly, Dr. Phillips did not review his previous medical records. (Tr. at 410) ("Contact Dr. Oguntuyo and Quality of Life and get his medical records"). The Quality of Life Health Services records also indicate that Mr. George continued to see Dr. Tariq for hypertension and refills of his medications, consistent with previous visits that occurred before the ALJ's hearing. Even assuming *arguendo* that the Southern Pain Management records, which concern his complaints about his medications'

side effects, are chronologically relevant, the records are not material.  Mr. George only complained about medications that he was prescribed *after* the ALJ's hearing. Furthermore, once he complained about Zanaflex and Opana, he or his doctor immediately ceased the prescription.  The Southern Pain Management records will not "change the administrative result."  *Hargress*, 874 F.3d at 1291.  Therefore, the Appeals Council's decision not to remand the case for further consideration was appropriate because the records were neither chronologically relevant nor material.


## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. George's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered contemporaneously herewith.

DATED this 26th day of March, 2018.


T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE